## RUSSELL v. STATE.

(Division B. Dec. 9, 1935.)

[164 So. 582. No. 31802.]

Barbour & Henry, of Yazoo City, for appellant.

J. G. Holmes and Wise & Bridgforth, all of Yazoo City, for the state.

W. D. Conn, Jr., Assistant Attorney-General, for the state.

Argued orally by **W. A. Henry**, for appellant, and by **W. D. Conn, Jr.**, for the state.

Ethridge, P. J., delivered the opinion of the court.

Bob Russell, appellant, was indicted in the circuit court of Yazoo county for the murder of Josh Oakes, tried and convicted of manslaughter, and sentenced to serve a term of seven years in the state penitentiary, from which this appeal is prosecuted.

It appears from the evidence that on the day of the killing, which was Sunday, the appellant went into a restaurant where a number of persons were present, among whom was Josh Oakes; that one of the parties therein stated, in substance, that the more they came the uglier they were, and suggested that they throw "Big Bob Russell" out, whereupon Russell used an opprobrious epithet, highly insulting, and stated that neither of them, nor any one else, could throw him out. Thereupon, Oakes, who had not taken part theretofore in that conversation, walked up to Russell and asked him if he meant him (Oakes) by the epithet used, and, according to some of the state's witnesses, Russell stated that they were all what the epithet indicated. That, thereupon, the owner of the restaurant put the parties out, stating that he did not want any disturbance. Later, Russell went into another restaurant, or beer parlor, called the "Red Chicken," and while in this beer parlor Oakes came up having the appearance of being somewhat intoxicated, and took the appellant and another by the neck, or put his arms around their necks, and asked them how they liked it; that the other party with Russell stated they liked it; that Oakes then stated to Russell that he was willing to apologize for what had happened that morning. Some of the witnesses stated that Russell would not accept the apology, while Russell stated he told Oakes it was all right. Shortly afterwards, Oakes started for the door and was followed by the appellant, and, as testified to by some of the witnesses, when Oakes reached the door he turned around and said to Russell, "Come

out you,'' applying to him the same epithet which Russell had applied to the crowd during the morning.

Thereupon, Russell fired several shots with his pistol, one of which struck Oakes on the right breast about the third or fourth rib, another which entered about the ninth or tenth rib, penetrating his liver. Oakes was also shot through the palm, and another shot clipped the small finger on the other hand.

There is some conflict as to just what Oakes was doing at the time of the shooting. The appellant testified that Oakes reached for his gun which was in his belt in front, and as he reached for it, the appellant fired deeming his life to be in jeopardy, and stated that he fired in self-defense.

According to some of the state's witnesses, at the time the first two shots were fired, Oakes was standing with his hand against the screen door, and after these two shots were fired he made a movement as if to draw a pistol, and he did draw a pistol, but never fired it, but turned and walked away. He was carried to a hospital, where he was stripped, and when his clothes were thrown to one side, one of the witnesses heard something rattle, and, on examination, it was found to be a pistol bullet.

Oakes lived, approximately, five months and then died of septicaemia caused by the bullet wounds in his liver inflicted by the appellant.

There was testimony that, between the first and second disturbances, Oakes stated to another party that he had been called an opprobrious name, using the epithet; that he was not going to take it; and that he was armed with a pistol. Oakes was a justice of the peace.

There were two witnesses for the state who testified to threats made by Russell between the two difficulties, one of them saying that Russell said he would go back down there and fill them so full of bullets their folks would not know them, or words of like import. According to another witness, he stated he would kill Oakes before he would be tried before him. It was proven without dis-

pute that he had not been tried before Oakes for any offense, nor were there any matters pending before Oakes charging Russell with any crime.

The appellant complains of certain instructions which were refused, but we have examined the instructions given on behalf of the appellant, as well as those given on behalf of the state, and we think the appellant received as liberal instructions as the law would allow under the evidence, and that the instructions given were the full and complete announcement of the law applicable to the case, and as favorable to the appellant, to say the least of it, as he was entitled to.

It is argued that the verdict is contrary to the law and the evidence. We are unable to agree with this contention. We think the evidence for the state was ample to convict, and might have warranted a graver crime, that of murder.

The appellant also complains of the introduction of the evidence of alleged threats made by Russell between the two difficulties. We think this evidence is competent, and whether or not it was true was a question for the jury.

It is urged that the jury, by their verdict, have found that Russell was not acting in self-defense, but that he shot in the heat of passion, and that the verdict is manifestly a compromise, because the appellant swore he did not kill in the heat of passion; that he was not angry; that he shot in self-defense; and that there is no element of manslaughter involved.

We are unable to agree with counsel in this argument. The circumstances connected with the killing may have caused the appellant to shoot through a misconception of danger, or of his right to do so under the circumstances, and yet the circumstances were such that the jury could infer that such belief, on the part of Russell, was not well founded and was unreasonable. Taking all the circumstances into consideration, the language applied to the appellant may have been sufficient to throw him into a highly exasperated state of mind, in which reason may

have been dethroned; but, at all events, the jury found the killing was wrongful and not justified, and if they found as favorable a verdict as the evidence warranted them to find, that is not prejudicial to the appellant. We see no reason, on reading the record, to arrive at the conclusion that the jury rendered a compromise verdict. The evidence being sufficient to warrant the jury in finding that the killing was wrongful, and they, by verdict, having so found, we cannot reverse them on the ground that they should have found a higher or a more severe penalty, and consequently the judgment will be affirmed.

Affirmed.